**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **Haydar Alireza, an individual,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Adam Khan and Carl Shurboff, individuals, and Does 1 through 10, individuals,**<br><br>**Defendants.** | **Case No. 1:26-CV-04048**<br><br>**Honorable John J. Tharp Jr.** |

## SHURBOFF'S COUNTERCLAIM

NOW COMES counter-plaintiff, Carl Shurboff, through his attorneys Richard J. Lofgren, Charles G. Wentworth, and Hashem El-Sharif of The Law Office of Lofgren & Wentworth, P.C., with his Counterclaim against counter-defendant Haydar Alireza and states:

### Introduction

1. Carl Shurboff was an employee of Akhan Semiconductor, Inc. ("Akhan") for just over eight years.

2. For the first five of those, he helped keep the company afloat by raiding his own IRA so he could lend money to the company for day-to-day operating expenses.

3. During this time, he also agreed (as set forth below) to defer large portions of his salary until such time as Akhan had sufficient funds from investors to pay that earned but unpaid Deferred Backpay.

4. Akhan, however, in a plan concocted and put into effect by Akhan's Compensation Committee (Haydar Alireaza, Tom Lacey, and King Lee) and a Board member who was acting as Akhan's de facto in-house counsel (Ron Vaisbort), returned the favor by repaying only a portion

of Shurboff's loans, significantly reducing his salary, and forcing him to unlawfully release his claim to his backpay in violation of the Illinois Wage Payment and Collection Act ("IWPCA").

5. Alireza, Lee, and Lacey's plan was then executed over the following years by the company's Board of Directors and its Officers (Alireza, Lacey, Lee, Vaisbort, Adam Khan, Craig Mitchell, John Thode, Charles Moore, Abdullah Al Khalifa, and Holger Heims).

6. Namely, those individuals as Akhan's Board of Directors ***unanimously*** agreed to adopt the plan devised by the Compensation Committee, drafted by Vaisbort, and then put it into effect by the company's Officers by refusing Shurboff's repeated requests to get his earned but unpaid Deferred Backpay addressed by the company.

7. Then, when Shurboff was terminated without cause in October 2023, Akhan's Directors and Officers refused to pay Shurboff his agreed-upon Severance Payment unless he executed an agreement that again illegally released his claim for earned but unpaid Deferred Backpay.

8. Finally, during Akhan's winddown, the remaining Board members then refused to use the company's assets to pay Shurboff's earned but unpaid Deferred Backpay even after he secured a judgment against Akhan in his favor, deciding instead to pay other of Akhan's creditors with its remaining assets.

9. All these actions were knowingly permitted and undertaken by Akhan's Directors and Officers, including Alireza, Lacey, Lee, Vaisbort, Khan, Mitchell, Thode, Moore, Al Khalifa, and Heims.

10. Further, not a single one of them took any steps in any Board meeting to vote against or change the plan devised by Akhan's Compensation Committee (namely, Alireza, Lee,

and Lacey) and drafted by Vaisbort, nor did any of them investigate (or even instruct anyone else to investigate) any of Shurboff's allegations that he was owed significant backpay and severance.

11. Indeed, when Shurboff continued making demands that his earned Deferred Backpay be paid to him, everyone he spoke with at Akhan about these issues pointed to the documents that the Compensation Committee had forced him to sign under duress as the basis for continuing to deny him his earned but unpaid Deferred Backpay.

12. Under Section 13 of the IWPCA, each of these Directors and Officers is personally liable for Akhan's violations of Sections 4 and 5 of the IWPCA because they knowingly permitted them to happen by failing to take ***any steps*** to stop it such as performing their own investigation into Shurboff's claims and instructing others to do so, which resulted in the Board relying on unfounded conclusions and erroneous legal advice.

13. Indeed, the Board members did this all the while approving the payment of backpay to multiple other of Akhan's employees and contractors who also had deferred compensation claims of their own.

14. The interests of these Directors and Officers were identical to Akhan's in seeing that the company properly defended against Shurboff's claims—if it were established that Akhan had no liability to Shurboff, then there would have been no IWPCA violations for them to have knowingly permitted.

15. Nevertheless, and although each of these Directors and Officers was well aware of Shurboff's deferred backpay claim against Akhan (indeed, in March 2024 they each participated in a full-day settlement conference regarding Shurboff's arbitration of his claims), none of these individuals intervened in the arbitration to assure that the case was properly defended and Akhan's (and more importantly, their own) interests were protected.

16. Instead, they allowed Shurboff to secure an arbitration award against Akhan that was subsequently confirmed by the Circuit Court of Cook County ("Final Judgment"), a judgment that was never appealed.

17. The Final Judgment included the following findings of fact and rulings of law:

a. The contractual provisions Akhan forced Shurboff to sign on threat of termination and withholding even partial repayment of his loans, "including but not limited to the release, representations, covenant not to sue, integration clauses, and any and all other provisions that purportedly waived, released, or otherwise limited his ability to pursue his Deferred Backpay wage claims, are repugnant to the public policy of the State of Illinois, and are in contravention of the Illinois Wage Payment and Collection Act and accordingly, are void and unenforceable as a matter of law" (Ex. A, Interim Order at 5, ¶ 1(a)(i));

b. Shurboff was "not required to first execute any waiver or release presented by [Akhan] that contains such a provision as [had been invalidated above] to receive the severance payment he may otherwise be entitled to" (*id*. at 5, ¶ 1(a)(ii));

c. Akhan violated Sections 4 and/or 5 of the IWPCA and judgment was entered in his favor in the amount of $2,000,498.60 as follows: (i) $1,630,656.00 related to his deferred unpaid wages and incentive bonuses earned from 2015 through 2020; (ii) $16,275.32 to his unpaid deferred income from August 2023 to October 2023; and (iii) $353,567.28 related to his unpaid Severance Payment (Ex. B, Final Judgment ¶ 3(a));

d. Under Section 14 of the IWPCA, Shurboff was awarded statutory penalties of $4,013,575.96 and his attorney's fees and costs in the amount of $1,089,732.05,

which the Arbitrator and Circuit Court found were reasonable and customary for the work performed (*id*. ¶ 3(b), 4, and 5); and

e. Judgment was entered against Akhan and in favor of Shurboff on all claims that Akhan raised against him in the Arbitration (*id*. ¶ 6).

18. In other words, Akhan now owes Shurboff $7,103,806.61, plus post-judgment attorney's fees and costs—amounts that all these individuals will personally be liable for when Shurboff establishes that they knowingly permitted Akhan's violations of the IWPCA to occur.

19. Moreover, because each of these individuals is in privity with Akhan (their interests being identical to Akhan's in seeing that the company not be held liable for any amounts due to Shurboff), they are now bound by the Final Judgment and cannot collaterally attack it. *See Malone v. Cosentino*, 99 Ill. 2d 29, 32-33 (1983); *Young v. Lorain*, 11 Ill. 624, 637 (1850); *Lewis v. Blumenthal*, 395 Ill. 588, 594 (1947); *Chamblin v. Chamblin*, 362 Ill. 588 (1936); *Terra-Nova Investments v. Rosewell*, 235 Ill. App. 3d 330, 335 (1st Dist. 1992).

20. Accordingly, because counter-defendant Haydar Alireza knowingly permitted Akhan's violations of the IWPCA, he is personally liable for the $7,103,806.61 that has already been determined to be owed by Akhan to Shurboff, plus additional attorney's fees and costs for this litigation, and this Court should enter judgment in Shurboff's favor for those amounts.

**Parties**

21. Shurboff is an individual residing in Illinois.

22. Alireza is an individual domiciled in Saudi Arabia.

23. Alireza served as a Director of Akhan Semiconductor, Inc. ("Akhan") from January 2021 until he resigned.

24. As described below, starting on July 8, 2021, Alireza also served (along with Lacey and Lee) as a member of Akhan's Compensation Committee.

**Jurisdiction and Venue**

25. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between Shurboff, Alireza, and Khan, each of whom are domiciled in a state or country different from all the others, and because Shurboff's claims are in excess of $75,000 exclusive of interest and costs.

26. The Court has personal jurisdiction over Alireza because he has done business in Illinois as a director of a corporation (Akhan) that had, during the relevant time period, its principal place of business in the city of Gurnee, Lake County, Illinois, which is covered by this District.

27. As a director and agent of Akhan, and as set forth in more detail below, Alireza therefore submitted himself to the jurisdiction of Illinois by knowingly permitting Akhan to violate the IWPCA by refusing to pay Shurboff his unpaid backpay when they came due, exercising his duties as a director of Akhan, and otherwise doing business in this state.

28. Venue is proper under 28 U.S.C. § 1391 because the contracts at issue were entered into here, the violations of the IWPCA occurred in this District, Alireza directed his efforts to this District, and Shurboff was damaged in this District.

**Facts**

Akhan Hires Shurboff and Shortly Thereafter Begins Deferring Some of His Pay

29. On April 20, 2015, Shurboff accepted Akhan's written offer of employment to become its Chief Operating Officer.

30. In exchange for Shurboff's services, Akhan agreed to pay Shurboff, among other things, a base annual salary of $400,000 and an annual incentive bonus.

31. Despite this, in the years of 2015 through 2020, Akhan deferred its payment of some of Shurboff's base annual salary and all of his annual incentive bonuses ("Deferred Backpay").

32. Adam Khan is Akhan's Founder and, when Shurboff was hired, held himself out as its CEO and Chairman of its Board of Directors.

33. On or about August 1, 2015, Khan (on behalf of Akhan) and Shurboff agreed that Shurboff's earned but unpaid Deferred Backpay would be paid when adequate funds were available through future investment fund-raising.

34. At the same time, Akhan also deferred some of Khan's annual salary which he said would also be paid when adequate funds were available through future investment fund-raising.

35. Beginning in December of 2020, Akhan undertook its Series A fund-raising with outside investors, including Alireza.

Alireza and Others Join Akhan's Board of Directors

36. On January 27, 2021, Akhan's Board elected Alireza, as well as King Lee and Holger Heims, as new members of the Board.

37. Moore and Al Khalifa had previously already been a member of the Board, having served in that capacity for many years.

38. Vaisbort and then Lacey also joined the Board in the spring and summer of 2021, respectively.

Khan Acknowledges the Deferred Backpay

39. On April 8, 2021, Khan had prepared, executed, and then sent to Shurboff a memo memorializing what Akhan and Shurboff had previously agreed was both his and Shurboff's

earned but unpaid Deferred Backpay—namely, that he and Shurboff were both still owed a total of $1,630,656 earned in 2015 through 2020 but not yet paid to them.

40. Shurboff and Khan agreed that the Deferred Backpay would be paid to them upon the closing of the then-present Series A fund-raising round.

41. On April 11, 2021, Khan texted Shurboff and informed him that he had had a "[g]ood call w [Alireza]."

42. Khan continued: "[H]e's very supportive and believe he will go along w [Al Khalifa] re back pay advance."

43. On information and belief, on or about May 5, 2021, Akhan's CFO became concerned that she had not disclosed Shurboff's and Khan's earned but unpaid Deferred Backpay to Akhan's auditors.

44. She thus recommended to Akhan that it reclassify Shurboff's earned but unpaid Deferred Backpay as future bonuses because doing so would allow it to stay off the company's financial books and would therefore not need to be disclosed to the auditors.

45. Thus, on May 5, 2021, Khan executed another memorandum that described Khan's and Shurboff's earned but unpaid Deferred Backpay as "bonuses," that their payment had been approved by the Board of Directors, and that $1,630,656 would be paid to each of Khan and Shurboff at the close of the Series A fund-raising round.

Alireza, Lee, and Lacey's Scheme to Get Rid of Shurboff's Claim

46. On or about June 29, 2021, Lacey, who had been added to Akhan's Board and who was fully aware of the earned and but unpaid Deferred Backpay owed to Shurboff, replaced Khan as Chairman of Akhan's Board of Directors.

47. Upon becoming Chairman of the Board, and at the direction of Lee and Alireza, Lacey insisted that Shurboff execute a general release of his earned but unpaid Deferred Backpay.

48. On July 4, 2021, Alireza emailed Lee, Heims, and Al Khalifa to discuss the situation with Shurboff, including "[h]is loan to the company" and his claim for "Deferred pay."

49. In that email, Alireza instructed Lee, Heims, and Al Khalifa that they should "discuss this verbally," expressly instructing them: "Don't respond to me in writing."

50. On July 7, 2021, Lacey emailed Alireza, Vaisbort, and Lee to update them on his communications with Shurboff.

51. All three responded that they were in agreement with Lacey's "plan" that included, among other things, not paying Shurboff any of his earned but unpaid Deferred Backpay.

52. Specifically, Vaisbort's response stated that he would work with Akhan's outside counsel over the next 24 hours "to get [Shurboff] a new employment agreement with the terms [Lacey] has framed out."

53. Vaisbort continued: "I'd like to see that signed before [Shurboff] gets a big pay out. Since we are headed down a good path, I'd rather not give him any opportunity to get squirrely."

54. The following day, on July 8, 2021, Lacey, Khan, Lee, Alireza, Al Khalifa, Heims, Vaisbort, and Moore met as Akhan's Board and ***unanimously*** approved Lacey's "plan" regarding how to deal with Shurboff's claim for Deferred Backpay.

55. Specifically, the minutes from that meeting state:

> Next, the Board discussed certain compensation-related issues with respect to one of the Company's management team, risks related thereto, and the proposed resolution of those issues in a manner satisfactory to both the Company and the individual. Following a discussion, the Board authorized Mr. Lacey and the Company's legal counsel to negotiate and formalize this individual's compensation agreement, substantially on the terms proposed.

56. Later that day, Lacey emailed Shurboff and listed multiple bullet points regarding how the situation would be addressed.

57. Among those would be that "[a]ny claims to backpay from Company to Carl are dismissed."

58. On July 15, 2021, Akhan (through Lacey and at Alireza's direction and with the unanimous approval of the company's Board) presented Shurboff with a new Employment Agreement.

59. In an unlawful attempt to have Shurboff waive and release his earned but unpaid Deferred Backpay, Lacey insisted that Shurboff also execute the General Release Agreement.

60. The General Release Agreement required Shurboff to release ***all claims he had against Akhan***, and expressly attempted to include in the general release an unlawful waiver and release Shurboff's wage claims related to the earned Deferred Backpay that amounted to $1,630,656.

61. Akhan also agreed, among other things, to pay Shurboff $50,000 for his general release of claims and repay him some of the money it had borrowed from him, but not the balance of those funds.

62. The General Release Agreement and the Employment Agreement also required that Shurboff make representations that he had been paid all wages owed to him.

63. In addition to the release and representations, the General Release Agreement also contained a provision that unlawfully required Shurboff to refund the $50,000 if he pursued a claim for his earned but unpaid Deferred Backpay.

64. As set forth in more detail below, Shurboff's release of claims, the representations in the July Agreements, and covenant not to sue all violated the IWPCA, which states in relevant part:

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed. The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void.

820 ILCS 115/9.

65. Prior to and after executing the General Release and Employment Agreements, Shurboff informed Lacey and other Akhan Directors and Officers that the company could not legally make him waive his earned but unpaid Deferred Backpay.

<u>Alireza's Knowledge of Shurboff's Claim for Deferred Backpay</u>

66. As early as April 4, 2021, Alireza had learned from Khan of Khan's and Shurboff's claims for earned but unpaid Deferred Backpay.

67. By late June 2021, Alireza knew of and had worked with Lacey, Lee, and Vaisbort to put together a "plan" to deprive Shurboff of the opportunity to pursue his earned but unpaid Deferred Backpay.

68. Nevertheless, Alireza continued investing his own money into Akhan.

69. On information and belief, Alireza never disclosed the extent of Shurboff's and Khan's claims for earned but unpaid Deferred Backpay to Alireza's friends and family.

70. To the contrary, Alireza allowed his friends and family to continue believing that there were no claims by any employees for earned but unpaid Deferred Backpay, and to invest in Akhan with that mistaken belief.

71. In the late summer or early fall of 2021, and as part of the process of creating investor disclosures, Shurboff informed Akhan's outside counsel of his and Khan's claims that they were owed earned but unpaid Deferred Backpay.

72. An initial draft of those disclosures contained the information provided by Shurboff to Akhan's outside attorneys regarding his and Khan's (as well as other employees' and contractors') claims for earned but unpaid deferred compensation.

73. The final version of that investor disclosure document, however, had the references to the earned but deferred unpaid compensation (including the references to Shurboff's and Khan's) removed from the document.

74. Shurboff did not instruct Akhan's outside counsel to remove those references.

Shurboff's Deferred Income and Severance Payment

75. For approximately the next 12 months, Shurboff continued to press Akhan's leadership, including but not limited to Lacey, Thode, and Mitchell, for the payment of his earned but unpaid Deferred Backpay.

76. Each time, however, the Akhan Directors and Officers that Shurboff spoke with took the position that Akhan did not owe Shurboff any Deferred Backpay because his claim to it had been released in the General Release Agreement.

77. Effective August 1, 2023, Akhan began deducting 20% of its executives' base salary, including Shurboff's, pursuant to what had been described to them as a deferred income program for the company's executives.

78. From then until his termination two months later, Shurboff's bimonthly payroll checks were reduced 20% with that amount supposedly being held by Akhan for his benefit as deferred income ("Deferred Income").

79. Shurboff has never received from Akhan this additional Deferred Income.

80. In late October 2023, Mitchell sent Shurboff correspondence informing him that his employment had been terminated without cause.

81. Attached to the correspondence was a Separation Agreement and Release ("Separation Agreement").

82. The Separation Agreement acknowledge that Shurboff's July 2021 Employment Agreement entitled him "to receive a severance payment equal to twelve (12) months of [his] then-current Base Salary."

83. At this point in time, Shurboff's base salary was $353,567.28.

84. The release language in the Severance Agreement, however, contained provisions that also violated Section 9 of the IWPCA, just as did Shurboff's July 2021 General Release and Employment Agreements.

85. Accordingly, the Severance Agreement was a continuation of the Compensation Committee's plan (as crafted by Alireza, Lacey, and Lee and drafted by Vaisbort) to coerce Shurboff into unlawfully releasing his earned but unpaid Deferred Backpay and his Deferred Income.

86. On November 9, 2023, counsel for Shurboff delivered correspondence to one of Akhan's co-CEOs informing him that, among other things, Shurboff could not execute the Separation Agreement in its current form because of the unlawful release provisions.

87. Instead of revising the Settlement Agreement and its release to remove the unlawful provisions, Akhan doubled down, reiterating that the releases and covenant not to sue contained in the 2021 General Release Agreement already resolved Shurboff's claims.

88. Thode and Mitchell, as Akhan's co-CEOs, and in consultation with Lacey who remained an advisor to Akhan's Board, continued with the plan that the Compensation Committee (Alireza, Lacey, and Lee) had devised in July 2021, that had been drafted by Vaisbort, ***and that was unanimously approved by the entire Board*** (Lacey, Khan, Lee, Alireza, Al Khalifa, Heims, Vaisbort, and Moore).

89. When he was not paid his Deferred Backpay, Deferred Income, or his Severance Payment, Shurboff brought claims against Akhan pursuant to an arbitration agreement with the company.

90. As part of the arbitration between Akhan and Shurboff, retired Judge Stuart Palmer ruled in favor of Shurboff that any portions of the July 2021 General Release and Employment Agreements that purported to limit Shurboff's wage claims are void because they violate Illinois public policy, as set forth in Section 9 of the IWPCA. (Ex. A, Interim Order at 5.)

91. Judge Palmer later awarded Shurboff over $7 million in wages, penalties, attorney's fees, and costs, all to be paid by Akhan, which award was subsequently confirmed in its entirety by the Circuit Court of Cook County. (Ex. B, Final Judgment ¶¶ 1-2.)

92. None of Thode, Mitchell, Lacey, Khan, Lee, Alireza, Al Khalifa, Heims, Vaisbort, or Moore intervened in the arbitration before Judge Palmer, in the confirmation proceedings of that arbitration award in the Circuit Court of Cook County, or to appeal the confirmation of the arbitration award to the First District Court of Appeals.

**Count I: Declaratory Judgment—Final Judgment Binding on Alireza**

93. Shurboff incorporates the previous paragraphs into this Count I.

94. There is an actual controversy between Shurboff and Alireza regarding whether Alireza is bound by the findings in the Final Judgment.

95. Alireza's interests in defending against Shurboff's claims are identical to that of Akhan.

96. As such, Alireza is in privity with Akhan.

97. As a privy of Akhan, Alireza is also bound by the Final Judgment, which confirmed in full the arbitration award issued by Judge Palmer in favor of Shurboff and against Akhan.

98. Shurboff is thus entitled to a declaration that Alireza is in privity with Akhan, that he cannot collaterally attack the Final Judgment, and that he is bound by the findings in the Final Judgment.

**Count II: Declaratory Judgment—Violations of IWPCA Section 9**

99. Shurboff incorporates the previous paragraphs into this Count II.

100. This Count II is pled in the alternative to Count I, which, if decided in Shurboff's favor, would moot this Count II as the issue has already been decided by Judge Palmer in the arbitration, and has been confirmed by the Circuit Court of Cook County in the Final Judgment.

101. On information and belief, Alireza intends to rely on the release, representations, warranties, covenant not to sue, and perhaps other language in the July 2021 General Release and Employment Agreements as part of his defense in this case.

102. There are actual controversies between Shurboff and Alireza regarding whether Shurboff can lawfully waive, release, or can be limited from pursuing his earned but unpaid Deferred Backpay owed by Akhan under any agreement, specifically including but not limited to the July 2021 General Release and Employment Agreements between him and Akhan, and if not, whether Shurboff can be required, as a condition of receiving his Severance Payment, to execute a general release that itself also requires him to unlawfully waive, release, or otherwise limit his ability to pursue his claims for Deferred Backpay and Deferred Income under the IWPCA.

103. The law in Illinois is clear that it is unlawful for an employer to attempt to have an employee waive and release its claim for earned wages.

104. This prohibition is codified in the IWPCA, which expressly states that "any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void." 820 ILCS 115/9.

105. Moreover, the Illinois Appellate Court for the First District has specifically held that the "settlement of claims in the form of a release signed by an employee relating to an employer's violation of the [IWPCA] is not permissible." *Schultz v. ABN Amro, Inc.*, 2017 Ill. App. (1st) 162140, ¶ 35 (citing 820 ILCS 115/9): *see also Lewis v. Giordano's Enters.*, 397 Ill. App. 3d 581, 921 N.E.2d 740, 753 (1st Dist. 2009); *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 856 N.E. 2d 639, 646 (1st Dist. 2006).

106. It is clear that, under Illinois law, waivers, releases, or agreements that limit the lawful pursuit of earned wages are unlawful and unenforceable.

107. And it would be improper to require Shurboff to execute a general release that includes unlawful provisions to qualify for the Severance Payment he is otherwise entitled to.

108. Indeed, retired Judge Stuart Palmer has already ruled in favor of Shurboff on this matter in the Arbitration, which ruling was confirmed by the Circuit Court of Cook County. (Ex. A, Interim Order; Ex. B, Final Judgment.)

109. Accordingly, Shurboff is entitled to a ruling from this Court that also voids the provisions of those contracts that purport to limit, as a matter of law, Shurboff's claim to Deferred Backpay, Deferred Income, or his Severance Payment.

**Count III: Violation of the Illinois Wage Payment and Collection Act (Sections 4, 5, and 13)**

110. Shurboff incorporates the previous paragraphs into this Count II.

111. Section 4 of the IWPCA requires that all wages earned by an employee be paid at the end of the pay period in which they were earned.

112. Pursuant to his agreement with Akhan, Shurboff's Deferred Backpay was due and owing upon the closing of Akhan's Series A fund-raising round in February 2022.

113. Alireza, as a Director and member of Akhan's Compensation Committee, knowingly permitted, voted in favor of, and put in place Lacey's "plan" that resulted in the July 2021 General Release and Employment Agreements.

114. Shurboff repeatedly told each of Thode, Mitchell, and Lacey (all of whom were Officers and Directors of Akhan) that Akhan could not refuse to pay him his Deferred Backpay because doing so violated Illinois law.

115. While Shurboff was employed from June 2021 through October 2023, Alireza knowingly permitted and took the actions set forth above to prevent Shurboff from receiving the Deferred Backpay, Deferred Income, and Severance Payment that he was due.

116. The "plan" that Lacey knowingly permitted and put into place with Alireza, Lee, and Vaisbort, and that was unanimously approved by Akhan's Board in June 2021, was continued by Alireza and the other Officers and Directors of Akhan through and after Shurboff's termination in October 2023.

117. Severance pay also constitutes either wages or final compensation. *Metropolitan Distributors, Inc. v. Illinois Dep't of Labor*, 114 Ill. App. 3d 1090, 449 N.E.2d 1000, 1006 (1st Dist. 1983).

118. Akhan's actions as set forth above violate Sections 4 and 5 of the IWPCA.

119. On information and belief, even after Alireza left Akhan's Board of Directors, he continued to be an agent of Akhan and continued working with its Officers and Directors

(including Thode and Mitchell) to execute Alireza, Lacy, and Lee's scheme to not pay Shurboff the amounts owed to him.

120. Because Alireza knowingly assisted and permitted Akhan to violate its obligations under the IWPCA, he should be deemed an employer and likewise found liable for Akhan's violations of the IWPCA. 820 ILCS 115/13.

121. Pursuant to the IWPCA, "any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14.

122. Damages of 5% of Shurboff's earned but unpaid Deferred Backpay began accruing, on a monthly basis, as early as the close of the Series A fund-raising round in or about February 2022.

123. Damages of 5% of the unpaid Severance Payment and Deferred Income began to accrue on a monthly basis starting on or about October 23, 2023.

**Count IV: Setoff**

124. Shurboff incorporates the previous paragraphs into this Count IV.

125. Any amounts due to Alireza under Counts I and II of his First Amended Complaint are set off by the amounts due to Shurboff by Alireza under the Counterclaims filed against Alireza.

WHEREFORE, counter-plaintiff Carl Shurboff requests that this Court enter an order in his favor and against counter-defendant Haydar Alireza as follows:

(a) Declare that Alireza is a privy of Akhan, and thus bound by the findings in the Final Judgment issued by the Circuit Court of Cook County on November 19, 2025, including the invalidity of the releases and waivers contained in the July 2021 General Release Agreement and Employment Agreement, Akhan's violations of Sections 4 and 5 of the IWPCA, and the dollar amounts found to be owed by Akhan to Shurboff;

(b) Declare under Illinois law that any and all provisions in the General Release Agreement or any other agreement whereby Shurboff waived, released or limited his ability to pursue his Deferred Backpay wage claims are repugnant to the public policy of the State of Illinois, and accordingly, are unenforceable and void as a matter of law;

(c) Declare that, because waivers and releases of an employee's wage claims are unenforceable, Shurboff was not required to execute any general release presented by Akhan that required him to unlawfully waive and release his Deferred Backpay and Deferred Income wage claims to receive the Severance Payment he would otherwise be entitled to receive under the July 2021 Employment Agreement.

(d) Shurboff's unpaid wages and final compensation owed by Akhan represented by the unpaid Deferred Backpay, in the amount of $1,630,656, the unpaid Severance Payment, in the amount of $353,567.28, and unpaid Deferred Income in the amount of $16,275.32, together with damages of 5% of those amounts for each month from that they remain unpaid, together with his costs and reasonable attorney's fees.

Date: August 29, 2026

Respectfully submitted,

*<u>/s/ Charles G. Wentworth</u>*
Richard J. Lofgren (ARDC 6190604)
Charles G. Wentworth (ARDC 6284238)
Hashem El-Sharif (ARDC 6352828)
The Law Office of Lofgren & Wentworth, P.C.
536 Crescent Blvd. Suite 200
Glen Ellyn, IL 60137
(630) 469-7100
rlofgren@elrlaw.com
cwentworth@elrlaw.com
hashem@elrlaw.com

*Counsel for Carl Shurboff*